(Slip Opinion) OCTOBER TERM, 2015 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNIVERSAL HEALTH SERVICES, INC. *v.* UNITED STATES ET AL. EX REL. ESCOBAR ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 15–7.  Argued April 19, 2016—Decided June 16, 2016

Yarushka Rivera, a teenage beneficiary of Massachusetts' Medicaid program, received counseling services for several years at Arbour Counseling Services, a satellite mental health facility owned and operated by a subsidiary of petitioner Universal Health Services, Inc. She had an adverse reaction to a medication that a purported doctor at Arbour prescribed after diagnosing her with bipolar disorder. Her condition worsened, and she eventually died of a seizure. Respondents, her mother and stepfather, later discovered that few Arbour employees were actually licensed to provide mental health counseling or authorized to prescribe medications or offer counseling services without supervision.

Respondents filed a *qui tam* suit, alleging that Universal Health had violated the False Claims Act (FCA). That Act imposes significant penalties on anyone who "knowingly presents . . . a false or fraudulent claim for payment or approval" to the Federal Government, 31 U. S. C. §3729(a)(1)(A). Respondents sought to hold Universal Health liable under what is commonly referred to as an "implied false certification theory of liability," which treats a payment request as a claimant's implied certification of compliance with relevant statutes, regulations, or contract requirements that are material conditions of payment and treats a failure to disclose a violation as a misrepresentation that renders the claim "false or fraudulent." Specifically, respondents alleged, Universal Health (acting through Arbour) defrauded the Medicaid program by submitting reimbursement claims that made representations about the specific services provided by specific types of professionals, but that failed to disclose serious violations of Massachusetts Medicaid regulations pertaining

to staff qualifications and licensing requirements for these services.
Universal Health thus allegedly defrauded the program because Universal Health knowingly misrepresented its compliance with mental health facility requirements that are so central to the provision of mental health counseling that the Medicaid program would have refused to pay these claims had it known of these violations.

The District Court granted Universal Health's motion to dismiss. It held that respondents had failed to state a claim under the "implied false certification" theory of liability because none of the regulations violated by Arbour was a condition of payment. The First Circuit reversed in relevant part, holding that every submission of a claim implicitly represents compliance with relevant regulations, and that any undisclosed violation of a precondition of payment (whether or not expressly identified as such) renders a claim "false or fraudulent." The First Circuit further held that the regulations themselves provided conclusive evidence that compliance was a material condition of payment because the regulations expressly required facilities to adequately supervise staff as a condition of payment.

*Held*:

   1. The implied false certification theory can be a basis for FCA liability when a defendant submitting a claim makes specific representations about the goods or services provided, but fails to disclose noncompliance with material statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services. Pp. 8–11.

      (a) The FCA does not define a "false" or "fraudulent" claim, so the Court turns to the principle that "absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses,'" *Sekhar* v. *United States*, 570 U. S. ___, ___. Under the common-law definition of "fraud," the parties agree, certain misrepresentations by omission can give rise to FCA liability. Respondents and the Government contend that every claim for payment implicitly represents that the claimant is legally entitled to payment, and that failing to disclose violations of material legal requirements renders the claim misleading. Universal Health, on the other hand, argues that submitting a claim involves no representations and that the nondisclosure of legal violations is not actionable absent a special duty of reasonable care to disclose such matters. Today's decision holds that the claims at issue may be actionable because they do more than merely demand payment; they fall squarely within the rule that representations that state the truth only so far as it goes, while omitting critical qualifying information, can be actionable misrepresentations. Pp. 8–10.

      (b) By submitting claims for payment using payment codes corre-

sponding to specific counseling services, Universal Health represented that it had provided specific types of treatment. And Arbour staff allegedly made further representations by using National Provider Identification numbers corresponding to specific job titles. By conveying this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations. Pp. 10–11.

2. Contrary to Universal Health's contentions, FCA liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment. Pp. 11–17.

(a) Section 3729(a)(1)(A), which imposes liability on those presenting "false or fraudulent claim[s]," does not limit claims to misrepresentations about express conditions of payment. Nothing in the text supports such a restriction. And under the Act's materiality requirement, statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment. Nor is the restriction supported by the Act's scienter requirement. A defendant can have "actual knowledge" that a condition is material even if the Government does not expressly call it a condition of payment. What matters is not the label that the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision. Universal Health's policy arguments are unavailing, and are amply addressed through strict enforcement of the FCA's stringent materiality and scienter provisions. Pp. 12–14.

(b) A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the FCA. The FCA's materiality requirement is demanding. An undisclosed fact is material if, for instance, "[n]o one can say with reason that the plaintiff would have signed this contract if informed of the likelihood" of the undisclosed fact. *Junius Constr. Co.* v. *Cohen,* 257 N. Y. 393, 400, 178 N. E. 672, 674. When evaluating the FCA's materiality requirement, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular requirement as a condition of payment. Nor is the Government's option to decline to pay if it knew of the defendant's noncompliance sufficient for a finding of materiality. Materiality also cannot be found where noncompliance is minor or insubstantial. Moreover, if the

Syllabus

Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. The FCA thus does not support the Government's and First Circuit's expansive view that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation. Pp. 14–17.

780 F. 3d 504, vacated and remanded.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

––––––––––

No. 15–7

––––––––––

## UNIVERSAL HEALTH SERVICES, INC., PETITIONER *v.* UNITED STATES AND MASSACHUSETTS, EX REL. JULIO ESCOBAR AND CARMEN CORREA

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[June 16, 2016]

JUSTICE THOMAS delivered the opinion of the Court.

The False Claims Act, 31 U. S. C. §3729 *et seq.*, imposes significant penalties on those who defraud the Government.  This case concerns a theory of False Claims Act liability commonly referred to as "implied false certification."  According to this theory, when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment.  But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under §3729(a)(1)(A).  This case requires us to consider this theory of liability and to clarify some of the circumstances in which the False Claims Act imposes liability.

We first hold that, at least in certain circumstances, the implied false certification theory can be a basis for liability.  Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly

fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading.

We further hold that False Claims Act liability for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment. Defendants can be liable for violating requirements even if they were not expressly designated as conditions of payment. Conversely, even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability. What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision.

A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act. We clarify below how that rigorous materiality requirement should be enforced.

Because the courts below interpreted §3729(a)(1)(A) differently, we vacate the judgment and remand so that those courts may apply the approach set out in this opinion.

## I

## A

Enacted in 1863, the False Claims Act "was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War." *United States* v. *Bornstein*, 423 U. S. 303, 309 (1976). "[A] series of sensational congressional investigations" prompted hearings where witnesses "painted a sordid picture of how

the United States had been billed for nonexistent or
worthless goods, charged exorbitant prices for goods deliv-
ered, and generally robbed in purchasing the necessities of
war." *United States* v. *McNinch*, 356 U. S. 595, 599
(1958). Congress responded by imposing civil and criminal
liability for 10 types of fraud on the Government, subject-
ing violators to double damages, forfeiture, and up to five
years' imprisonment. Act of Mar. 2, 1863, ch. 67, 12 Stat.
696.

Since then, Congress has repeatedly amended the Act,
but its focus remains on those who present or directly
induce the submission of false or fraudulent claims. See
31 U. S. C. §3729(a) (imposing civil liability on "any person
who . . . knowingly presents, or causes to be presented, a
false or fraudulent claim for payment or approval"). A
"claim" now includes direct requests to the Government
for payment as well as reimbursement requests made to
the recipients of federal funds under federal benefits
programs. See §3729(b)(2)(A). The Act's scienter re-
quirement defines "knowing" and "knowingly" to mean
that a person has "actual knowledge of the information,"
"acts in deliberate ignorance of the truth or falsity of the
information," or "acts in reckless disregard of the truth or
falsity of the information." §3729(b)(1)(A). And the Act
defines "material" to mean "having a natural tendency to
influence, or be capable of influencing, the payment or
receipt of money or property." §3729(b)(4).

Congress also has increased the Act's civil penalties so
that liability is "essentially punitive in nature." *Vermont
Agency of Natural Resources* v. *United States ex rel. Ste-
vens*, 529 U. S. 765, 784 (2000). Defendants are subjected
to treble damages plus civil penalties of up to $10,000 per
false claim. §3729(a); 28 CFR §85.3(a)(9) (2015) (adjusting
penalties for inflation).

B

The alleged False Claims Act violations here arose within the Medicaid program, a joint state-federal program in which healthcare providers serve poor or disabled patients and submit claims for government reimbursement. See generally 42 U. S. C. §1396 *et seq.* The facts recited in the complaint, which we take as true at this stage, are as follows. For five years, Yarushka Rivera, a teenage beneficiary of Massachusetts' Medicaid program, received counseling services at Arbour Counseling Services, a satellite mental health facility in Lawrence, Massachusetts, owned and operated by a subsidiary of petitioner Universal Health Services. Beginning in 2004, when Yarushka started having behavioral problems, five medical professionals at Arbour intermittently treated her. In May 2009, Yarushka had an adverse reaction to a medication that a purported doctor at Arbour prescribed after diagnosing her with bipolar disorder. Her condition worsened; she suffered a seizure that required hospitalization. In October 2009, she suffered another seizure and died. She was 17 years old.

Thereafter, an Arbour counselor revealed to respondents Carmen Correa and Julio Escobar—Yarushka's mother and stepfather—that few Arbour employees were actually licensed to provide mental health counseling and that supervision of them was minimal. Respondents discovered that, of the five professionals who had treated Yarushka, only one was properly licensed. The practitioner who diagnosed Yarushka as bipolar identified herself as a psychologist with a Ph. D., but failed to mention that her degree came from an unaccredited Internet college and that Massachusetts had rejected her application to be licensed as a psychologist. Likewise, the practitioner who prescribed medicine to Yarushka, and who was held out as a psychiatrist, was in fact a nurse who lacked authority to prescribe medications absent supervision. Rather than

ensuring supervision of unlicensed staff, the clinic's director helped to misrepresent the staff's qualifications. And the problem went beyond those who treated Yarushka. Some 23 Arbour employees lacked licenses to provide mental health services, yet—despite regulatory requirements to the contrary—they counseled patients and prescribed drugs without supervision.

When submitting reimbursement claims, Arbour used payment codes corresponding to different services that its staff provided to Yaruskha, such as "Individual Therapy" and "family therapy." 1 App. 19, 20. Staff members also misrepresented their qualifications and licensing status to the Federal Government to obtain individual National Provider Identification numbers, which are submitted in connection with Medicaid reimbursement claims and correspond to specific job titles. For instance, one Arbour staff member who treated Yaruskha registered for a number associated with "'Social Worker, Clinical,'" despite lacking the credentials and licensing required for social workers engaged in mental health counseling. 1 *id.,* at 32.

After researching Arbour's operations, respondents filed complaints with various Massachusetts agencies. Massachusetts investigated and ultimately issued a report detailing Arbour's violation of over a dozen Massachusetts Medicaid regulations governing the qualifications and supervision required for staff at mental health facilities. Arbour agreed to a remedial plan, and two Arbour employees also entered into consent agreements with Massachusetts.

In 2011, respondents filed a *qui tam* suit in federal court, see 31 U. S. C. §3730, alleging that Universal Health had violated the False Claims Act under an implied false certification theory of liability. The operative complaint asserts that Universal Health (acting through Arbour) submitted reimbursement claims that made representations about the specific services provided by

specific types of professionals, but that failed to disclose serious violations of regulations pertaining to staff qualifications and licensing requirements for these services.[1] Specifically, the Massachusetts Medicaid program requires satellite facilities to have specific types of clinicians on staff, delineates licensing requirements for particular positions (like psychiatrists, social workers, and nurses), and details supervision requirements for other staff. See 130 Code Mass. Regs. §§429.422–424, 429.439 (2014). Universal Health allegedly flouted these regulations because Arbour employed unqualified, unlicensed, and unsupervised staff. The Massachusetts Medicaid program, unaware of these deficiencies, paid the claims. Universal Health thus allegedly defrauded the program, which would not have reimbursed the claims had it known that it was billed for mental health services that were performed by unlicensed and unsupervised staff. The United States declined to intervene.

The District Court granted Universal Health's motion to dismiss the complaint. Circuit precedent had previously embraced the implied false certification theory of liability. See, *e.g.*, *United States ex rel. Hutcheson* v. *Blackstone Medical, Inc.*, 647 F. 3d 377, 385–387 (CA1 2011). But the District Court held that respondents had failed to state a claim under that theory because, with one exception not relevant here, none of the regulations that Arbour violated was a condition of payment. See 2014 WL 1271757, *1, *6–*12 (D Mass., Mar. 26, 2014).

The United States Court of Appeals for the First Circuit reversed in relevant part and remanded. 780 F. 3d 504, 517 (2015). The court observed that each time a billing

---

[1] Although Universal Health submitted some of the claims at issue before 2009, we assume—as the parties have done—that the 2009 amendments to the False Claims Act apply here. Universal Health does not argue, and we thus do not consider, whether pre-2009 conduct should be treated differently.

party submits a claim, it "implicitly communicate[s] that it conformed to the relevant program requirements, such that it was entitled to payment." *Id.,* at 514, n. 14. To determine whether a claim is "false or fraudulent" based on such implicit communications, the court explained, it "asks simply whether the defendant, in submitting a claim for reimbursement, knowingly misrepresented compliance with a material precondition of payment." *Id.,* at 512. In the court's view, a statutory, regulatory, or contractual requirement can be a condition of payment either by expressly identifying itself as such or by implication. *Id.,* at 512–513. The court then held that Universal Health had violated Massachusetts Medicaid regulations that "clearly impose conditions of payment." *Id.,* at 513. The court further held that the regulations themselves "constitute[d] dispositive evidence of materiality," because they identified adequate supervision as an "express and absolute" condition of payment and "repeated[ly] reference[d]" supervision. *Id.,* at 514 (internal quotation marks omitted).

We granted certiorari to resolve the disagreement among the Courts of Appeals over the validity and scope of the implied false certification theory of liability. 577 U. S. \_\_\_ (2015). The Seventh Circuit has rejected this theory, reasoning that only express (or affirmative) falsehoods can render a claim "false or fraudulent" under 31 U. S. C. §3729(a)(1)(A). *United States* v. *Sanford-Brown, Ltd.*, 788 F. 3d 696, 711–712 (2015). Other courts have accepted the theory, but limit its application to cases where defendants fail to disclose violations of expressly designated conditions of payment. *E.g., Mikes* v. *Straus*, 274 F. 3d 687, 700 (CA2 2011). Yet others hold that conditions of payment need not be expressly designated as such to be a basis for False Claims Act liability. *E.g., United States* v. *Science Applications Int'l Corp.*, 626 F. 3d 1257, 1269 (CADC 2010) (*SAIC*).

## II

We first hold that the implied false certification theory can, at least in some circumstances, provide a basis for liability. By punishing defendants who submit "false or fraudulent claims," the False Claims Act encompasses claims that make fraudulent misrepresentations, which include certain misleading omissions. When, as here, a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided.

To reach this conclusion, "[w]e start, as always, with the language of the statute." *Allison Engine Co.* v. *United States ex rel. Sanders*, 553 U. S. 662, 668 (2008) (brackets in original; internal quotation marks omitted). The False Claims Act imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." §3729(a)(1)(A). Congress did not define what makes a claim "false" or "fraudulent." But "[i]t is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses." *Sekhar* v. *United States*, 570 U. S. ___, ___ (2013) (slip op., at 3) (internal quotation marks omitted). And the term "fraudulent" is a paradigmatic example of a statutory term that incorporates the common-law meaning of fraud. See *Neder* v. *United States*, 527 U. S. 1, 22 (1999) (the term "actionable 'fraud'" is one with "a well-settled meaning at common law").[2]

_____

[2] The False Claims Act abrogates the common law in certain respects. For instance, the Act's scienter requirement "require[s] no proof of specific intent to defraud." 31 U. S. C. §3729(b)(1)(B). But we presume that Congress retained all other elements of common-law fraud that are consistent with the statutory text because there are no textual indicia to the contrary. See *Neder,* 527 U. S*.,* at 24–25.

Because common-law fraud has long encompassed certain misrepresentations by omission, "false or fraudulent claims" include more than just claims containing express falsehoods. The parties and the Government agree that misrepresentations by omission can give rise to liability. Brief for Petitioner 30–31; Brief for Respondents 22–31; Brief for United States as *Amicus Curiae* 16–20.

The parties instead dispute whether submitting a claim without disclosing violations of statutory, regulatory, or contractual requirements constitutes such an actionable misrepresentation. Respondents and the Government invoke the common-law rule that, while nondisclosure alone ordinarily is not actionable, "[a] representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter" is actionable. Restatement (Second) of Torts §529, p. 62 (1976). They contend that every submission of a claim for payment implicitly represents that the claimant is legally entitled to payment, and that failing to disclose violations of material legal requirements renders the claim misleading. Universal Health, on the other hand, argues that submitting a claim involves no representations, and that a different common-law rule thus governs: nondisclosure of legal violations is not actionable absent a special "'duty . . . to exercise reasonable care to disclose the matter in question,'" which it says is lacking in Government contracting. Brief for Petitioner 31 (quoting Restatement (Second) of Torts §551(1), at 119).

We need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment. The claims in this case do more than merely demand payment. They fall squarely within the rule that half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying

information—can be actionable misrepresentations.[3]   A classic example of an actionable half-truth in contract law is the seller who reveals that there may be two new roads near a property he is selling, but fails to disclose that a third potential road might bisect the property.  See *Junius Constr. Co.* v. *Cohen*, 257 N. Y. 393, 400, 178 N. E. 672, 674 (1931) (Cardozo, J.).  "The enumeration of two streets, described as unopened but projected, was a tacit representation that the land to be conveyed was subject to no others, and certainly subject to no others materially affecting the value of the purchase." *Ibid.*  Likewise, an applicant for an adjunct position at a local college makes an actionable misrepresentation when his resume lists prior jobs and then retirement, but fails to disclose that his "retirement" was a prison stint for perpetrating a $12 million bank fraud.  See 3 D. Dobbs, P. Hayden, & H. Bublick, Law of Torts §682, pp. 702–703, and n. 14 (2d ed. 2011) (citing *Sarvis* v. *Vermont State Colleges*, 172 Vt. 76, 78, 80–82, 772 A. 2d 494, 496, 497–499 (2001)).

So too here, by submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment.  Moreover, Arbour staff members allegedly made further representations in submitting Medicaid reimbursement claims by using National Provider Identification numbers corresponding to specific job titles.  And these representations

---

[3] This rule recurs throughout the common law.  In tort law, for example, "if the defendant does speak, he must disclose enough to prevent his words from being misleading."  W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts §106, p. 738 (5th ed. 1984).  Contract law also embraces this principle.  See, *e.g.,* Restatement (Second) of Contracts §161, Comment *a*, p. 432 (1979).  And we have used this definition in other statutory contexts.  See, *e.g.*, *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U. S. 27, 44 (2011) (securities law).

were clearly misleading in context. Anyone informed that a social worker at a Massachusetts mental health clinic provided a teenage patient with individual counseling services would probably—but wrongly—conclude that the clinic had complied with core Massachusetts Medicaid requirements (1) that a counselor "treating children [is] required to have specialized training and experience in children's services," 130 Code Mass. Regs. §429.422, and also (2) that, at a minimum, the social worker possesses the prescribed qualifications for the job, §429.424(C). By using payment and other codes that conveyed this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations.

Accordingly, we hold that the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.[4]

## III

The second question presented is whether, as Universal Health urges, a defendant should face False Claims Act liability only if it fails to disclose the violation of a contractual, statutory, or regulatory provision that the Govern-

––––––––––

[4] As an alternative argument, Universal Health asserts that misleading partial disclosures constitute fraudulent misrepresentations only when the initial statement partially disclosed unfavorable information. Not so. "[A] statement that contains only favorable matters and omits all reference to unfavorable matters is as much a false representation as if all the facts stated were untrue." Restatement (Second) of Torts, §529, Comment *a*, pp. 62–63 (1976).

ment expressly designated a condition of payment. We conclude that the Act does not impose this limit on liability. But we also conclude that not every undisclosed violation of an express condition of payment automatically triggers liability. Whether a provision is labeled a condition of payment is relevant to but not dispositive of the materiality inquiry.

## A

Nothing in the text of the False Claims Act supports Universal Health's proposed restriction. Section 3729(a)(1)(A) imposes liability on those who present "false or fraudulent claims" but does not limit such claims to misrepresentations about express conditions of payment. See *SAIC*, 626 F. 3d, at 1268 (rejecting any textual basis for an express-designation rule). Nor does the common-law meaning of fraud tether liability to violating an express condition of payment. A statement that misleadingly omits critical facts is a misrepresentation irrespective of whether the other party has expressly signaled the importance of the qualifying information. *Supra,* at 9–11.

The False Claims Act's materiality requirement also does not support Universal Health. Under the Act, the misrepresentation must be material to the other party's course of action. But, as discussed below, see *infra*, at 15–17, statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment. Cf. *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U. S. 27, 39 (2011) (materiality cannot rest on "a single fact or occurrence as always determinative" (internal quotation marks omitted)).

Nor does the Act's scienter requirement, §3729(b)(1)(A), support Universal Health's position. A defendant can have "actual knowledge" that a condition is material without the Government expressly calling it a condition of payment. If the Government failed to specify that guns it

orders must actually shoot, but the defendant knows that the Government routinely rescinds contracts if the guns do not shoot, the defendant has "actual knowledge." Likewise, because a reasonable person would realize the imperative of a functioning firearm, a defendant's failure to appreciate the materiality of that condition would amount to "deliberate ignorance" or "reckless disregard" of the "truth or falsity of the information" even if the Government did not spell this out.

Universal Health nonetheless contends that False Claims Act liability should be limited to undisclosed violations of expressly designated conditions of payment to provide defendants with fair notice and to cabin liability. But policy arguments cannot supersede the clear statutory text. *Kloeckner* v. *Solis*, 568 U. S. \_\_\_, \_\_\_–\_\_\_, n. 4 (2012) (slip op., at 13–14, n. 4). In any event, Universal Health's approach risks undercutting these policy goals. The Government might respond by designating every legal requirement an express condition of payment. But billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing False Claims Act liability for violating any of them would hardly help would-be defendants anticipate and prioritize compliance obligations. And forcing the Government to expressly designate a provision as a condition of *payment* would create further arbitrariness. Under Universal Health's view, misrepresenting compliance with a requirement that the Government expressly identified as a condition of payment could expose a defendant to liability. Yet, under this theory, misrepresenting compliance with a condition of eligibility to even participate in a federal program when submitting a claim would not.

Moreover, other parts of the False Claims Act allay Universal Health's concerns. "[I]nstead of adopting a circumscribed view of what it means for a claim to be false or fraudulent," concerns about fair notice and open-ended

liability "can be effectively addressed through strict enforcement of the Act's materiality and scienter requirements." *SAIC, supra,* at 1270. Those requirements are rigorous.

B

As noted, a misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act. We now clarify how that materiality requirement should be enforced.

Section 3729(b)(4) defines materiality using language that we have employed to define materiality in other federal fraud statutes: "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." See *Neder*, 527 U. S., at 16 (using this definition to interpret the mail, bank, and wire fraud statutes); *Kungys* v. *United States*, 485 U. S. 759, 770 (1988) (same for fraudulent statements to immigration officials). This materiality requirement descends from "common-law antecedents." *Id.,* at 769. Indeed, "the common law could not have conceived of 'fraud' without proof of materiality." *Neder*, *supra,* at 22; see also Brief for United States as *Amicus Curiae* 30 (describing common-law principles and arguing that materiality under the False Claims Act should involve a "similar approach").

We need not decide whether §3729(a)(1)(A)'s materiality requirement is governed by §3729(b)(4) or derived directly from the common law. Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." 26 R. Lord, Williston on Contracts §69:12, p. 549 (4th ed. 2003) (Williston). In tort law, for instance, a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in deter-

mining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not. Restatement (Second) of Torts §538, at 80. Materiality in contract law is substantially similar. See Restatement (Second) of Contracts §162(2), and Comment *c*, pp. 439, 441 (1979) ("[A] misrepresentation is material" only if it would "likely . . . induce a reasonable person to manifest his assent," or the defendant "knows that for some special reason [the representation] is likely to induce the particular recipient to manifest his assent" to the transaction).[5]

The materiality standard is demanding. The False Claims Act is not "an all-purpose antifraud statute," *Allison Engine*, 553 U. S., at 672, or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defend-

———————

[5] Accord, Williston §69:12, pp. 549–550 ("most popular" understanding is "that a misrepresentation is material if it concerns a matter to which a reasonable person would attach importance in determining his or her choice of action with respect to the transaction involved: which will induce action by a complaining party[,] knowledge of which would have induced the recipient to act differently" (footnote omitted)); *id.,* at 550 (noting rule that "a misrepresentation is material if, had it not been made, the party complaining of fraud would not have taken the action alleged to have been induced by the misrepresentation"); *Junius Constr. Co.* v. *Cohen*, 257 N. Y. 393, 400, 178 N. E. 672, 674 (1931) (a misrepresentation is material if it "went to the very essence of the bargain"); cf. *Neder* v. *United States*, 527 U. S. 1, 16, 22, n. 5 (1999) (relying on "'natural tendency to influence'" standard and citing Restatement (Second) of Torts §538 definition of materiality).

ant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial. See *United States ex rel. Marcus* v. *Hess*, 317 U. S. 537, 543 (1943) (contractors' misrepresentation that they satisfied a non-collusive bidding requirement for federal program contracts violated the False Claims Act because "[t]he government's money would never have been placed in the joint fund for payment to respondents had its agents known the bids were collusive"); see also *Junius Constr.*, 257 N. Y., at 400, 178 N. E., at 674 (an undisclosed fact was material because "[n]o one can say with reason that the plaintiff would have signed this contract if informed of the likelihood" of the undisclosed fact).

In sum, when evaluating materiality under the False Claims Act, the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive. Likewise, proof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement. Conversely, if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.[6]

———————

[6]We reject Universal Health's assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment. The standard for materiality that we have outlined is a familiar and rigorous one. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance,

These rules lead us to disagree with the Government's and First Circuit's view of materiality: that any statutory, regulatory, or contractual violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation. See Brief for United States as *Amicus Curiae* 30; Tr. of Oral Arg. 43 (Government's "test" for materiality "is whether the person knew that the government could lawfully withhold payment"); 780 F. 3d, at 514; see also Tr. of Oral Arg. 26, 29 (statements by respondents' counsel endorsing this view). At oral argument, the United States explained the implications of its position: If the Government contracts for health services and adds a requirement that contractors buy American-made staplers, anyone who submits a claim for those services but fails to disclose its use of foreign staplers violates the False Claims Act. To the Government, liability would attach if the defendant's use of foreign staplers would entitle the Government not to pay the claim in whole or part—irrespective of whether the Government routinely pays claims despite knowing that foreign staplers were used. *Id.*, at 39–45. Likewise, if the Government required contractors to aver their compliance with the entire U. S. Code and Code of Federal Regulations, then under this view, failing to mention noncompliance with any of those requirements would always be material. The False Claims Act does not adopt such an extraordinarily expansive view of liability.

\*    \*    \*

Because both opinions below assessed respondents' complaint based on interpretations of §3729(a)(1)(A) that differ from ours, we vacate the First Circuit's judgment and remand the case for reconsideration of whether respondents have sufficiently pleaded a False Claims Act

_____

pleading facts to support allegations of materiality.

violation.   See *Omnicare, Inc.* v. *Laborers Dist. Council Constr. Industry Pension Fund*, 575 U. S. ___, ___ (2015) (slip op., at 19).   We emphasize, however, that the False Claims Act is not a means of imposing treble damages and other penalties for insignificant regulatory or contractual violations.   This case centers on allegations of fraud, not medical malpractice.   Respondents have alleged that Universal Health misrepresented its compliance with mental health facility requirements that are so central to the provision of mental health counseling that the Medicaid program  would not have paid these claims had it known of these violations.   Respondents may well have adequately pleaded a violation of §3729(a)(1)(A).   But we leave it to the courts below to resolve this in the first instance.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*